UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL SHEEKS,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

Case No. 13-13647

Hon. Patrick J. Duggan

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION, DENYING DEFENDANT'S MOTION, AND REMANDING THE MATTER FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

Plaintiff Michael Sheeks seeks judicial review of a final decision of Defendant Commissioner of Social Security denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Presently before the Court are Plaintiff's Motion for Summary Judgment and Remand Pursuant to Sentence Four and Defendant's Motion for Summary Judgment. For the reasons set forth herein, the Court grants Plaintiff's Motion, denies Defendant's Motion, and remands the decision of the Commissioner of Social Security pursuant to Sentence Four of 42 U.S.C. § 405(g).

I.  BACKGROUND

Plaintiff applied for SSI in March 2010, alleging disability due to a combination of mental and physical impairments, with an onset date of September 23, 2003. After Plaintiff's application was denied by the state agency examiner, Plaintiff requested an administrative hearing before an Administrative Law Judge ("ALJ"). On March 12, 2012, Plaintiff appeared with counsel before ALJ Donald G. D'Amato, who considered his case *de novo*. Lois Brooks, an impartial vocational expert, also testified at the hearing.

On April 12, 2012, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act (hereinafter, the "Act"). (ECF No. 10-2, Pg ID 35-53.) The ALJ's decision became the final decision of the Commissioner on June 24, 2013, when the Social Security Administration's Appeals Council denied Plaintiff's request for review. (*Id.* at Pg ID 23.) Plaintiff filed the present action seeking judicial review of the Commissioner's unfavorable decision on August 26, 2014.

The facts involved in Plaintiff's application for SSI benefits are comprehensively set forth in the ALJ's decision. To the extent Plaintiff's medical history and records are relevant to the issues raised in this appeal, they are addressed in the body of this Opinion and Order.

## II.     THE ALJ'S APPLICATION OF THE DISABILITY FRAMEWORK

Under the Act, SSI benefits "are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905 (SSI).

The determination of whether an individual is disabled involves application of the Social Security Administration's five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). The five-step process is as follows:

1. At the first step, the ALJ considers whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i).

2. At the second step, the ALJ considers whether the claimant has a severe medically determinable physical or mental impairment that meets the duration requirement of the regulations and which significantly limits the claimant's ability to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii) and (c).

3. At the third step, the ALJ again considers the medical severity of the claimant's impairment to determine whether the impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairment meets any Listing, he or she is determined to be disabled regardless of other factors. *Id*.

4. At the fourth step, the ALJ assesses the claimant's residual functional capacity and past relevant work to determine whether the claimant can perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv).

> 5. At the fifth step, the ALJ considers the claimant's residual functional capacity, age, education, and past work experience to see if he can do other work. 20 C.F.R. § 404.1420(a)(4)(v). If there is no such work that the claimant can perform, the ALJ must find that he or she is disabled. *Id.*

If an ALJ determines that the claimant is or is not disabled at a step of the evaluation process, the evaluation does not proceed. *Id.* "The burden of proof is on the claimant through the first four steps. . . . If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of March 3, 2010. (ECF No. 10-2, Pg ID 37.) At step two, he found that Plaintiff had the following severe impairments: bilateral carpal tunnel syndrome (right greater than left); seizure disorder; cognitive disorder/organic brain syndrome secondary to closed head injury in 2003; recurrent major depression; mood disorder secondary to general medical condition; obesity; TMJ syndrome; headaches; right long trigger finger; mild osteoarthritis, right knee; lumbar disorder; borderline intellectual functioning; borderline pulmonary disease; history of substance abuse, in remission; anxiety disorder, NOS; insomnia; right later epicondyle; status post right triquestrum avulsion fracture; and hyperlipidemia. (*Id.* at Pg ID 37.) Next, the ALJ concluded

that none of these impairments, either alone or in combination, met or medically equaled a listed impairment. (*Id.* at Pg ID 37-40.) Between steps three and four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to:

> Perform simple, unskilled work with one-, two-, or three-step instructions, occasionally in proximity to workers (meaning that he can occasionally function as a member of a team), and occasionally in direct contact with the public, in a "low stress" work environment defined as having only occasional changes in the work setting; the work environment should have ready access to restrooms for its workers; can lift and/or carry 10 pounds frequently and 20 pounds occasionally; the claimant can stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, but can do so for only half an hour at a time; can sit with normal breaks for a total of about six hours in an eight-hour workday; can perform pushing and pulling motions with the lower extremities and left upper extremity within the aforementioned weight restrictions, but can only do so with the right upper extremity for up to 2/3 of a workday; can do no overhead reaching with the right upper extremity; can perform activities requiring bilateral manual dexterity for both gross and fine manipulation with handling and reaching for up to 2/3 of the workday; needs to avoid hazards in the workplace such as moving machinery and unprotected heights; needs to avoid vibrations; needs to be restricted to a relatively clean work environment meaning stable temperatures, stable humidity, and good ventilation that allows him to avoid concentrated exposure to dust, fumes, gases, odors, and other pulmonary irritants; and can occasionally climb stairs with handrails, balance, stoop, crouch, kneels, and crawl, but needs to avoid climbing ladders, scaffolds, and ropes.

(*Id.* at Pg ID 40.) At step four, the ALJ noted that Plaintiff had no past relevant work. (*Id.* at Pg ID 52.) Because Plaintiff was closely approaching advanced age at the time of the decision, the ALJ further noted that Plaintiff had at least a high school education and was able to communicate in English. However, because he

had no past relevant work, transferability of job skills was "not an issue[.]" (*Id.*) At the fifth and final step, the ALJ considered the testimony of the vocational expert and concluded that "there are jobs that exist in significant numbers in that national economy that claimant can perform[.]" (*Id.*) The ALJ therefore concluded that Plaintiff was not under a disability as defined by the Act and its implementing regulations.

### III. STANDARD OF REVIEW

This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited: the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted).

A district court's review of an ALJ's factual findings involves application of the substantial evidence standard. Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed

even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts") (internal quotation marks omitted).

When reviewing the Commissioner's factual findings for substantial evidence, courts are limited to examining the record and must consider that record as a whole. *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992) (explaining that courts reviewing the Commissioner's factual findings for substantial evidence must consider the evidence in the record as a whole, including evidence which might subtract from its weight). Federal courts do "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247.

The other line of judicial inquiry – reviewing for correctness of the ALJ's legal analysis – may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a

7

decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007) and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)); *cf. Buchanan v. Apfel*, 249 F.3d 485, 492 (6th Cir. 2001) (the Commissioner has a clear, nondiscretionary duty to comply with social security regulations).

## IV. ANALYSIS

In his motion, Plaintiff asks this Court to remand the case to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g). Specifically, Plaintiff seeks remand so that the Commissioner will reevaluate the case in accordance with certain Social Security Rulings ("SSR").[1] The issues the Court must address are as follows: whether the ALJ's properly considered Plaintiff's obesity pursuant to SSR 02-1p and whether the ALJ's failure to acquire

---

[1] "Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 273 n.1 (6th Cir. 2010) (quoting 20 C.F.R. § 402.35(b)(1)). In *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 549 (6th Cir. 2004), the court refrained from ruling on whether Social Security Rulings are binding on the Commissioner in the same manner as the regulations implementing the Act, but assumed that they are. *See also Ferguson*, 628 F.3d at 273 n.1. The Court applies this same presumption in the instant case.

8

a medical advisor opinion with respect to medical equivalence at step three mandates reconsideration by the Administration.

In his first line of argumentation, Plaintiff contends that the ALJ's decision should be remanded because the ALJ did not consider his obesity, as required under SSR 02-1p. Conversely, Defendant argues that the ALJ's explicit reference to obesity as a severe impairment at step two is indicative of the ALJ's consideration of Plaintiff's obesity. In the alternative, Defendant contends that even if the ALJ erred by not adhering to the directives set forth in SSR 02-1p, the error is harmless because Plaintiff has not identified any obesity-related limitations that the ALJ failed to include in his RFC assessment, nor has Plaintiff cited to medical evidence that would support additional functional restrictions related to obesity.

Obesity, as defined in SSR 02-1p, "is a complex, chronic disease characterized by excessive accumulation of body fat." 2002 SSR LEXIS 1, at *3. "Obesity is a risk factor that increases an individual's chances of developing impairments in most body systems," and "commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems." *Id.* at *6. "Obesity may also cause or contribute to mental impairments such as depression." *Id.* at *7.

9

SSR 02-1p explains that the National Institutes of Health has established guidelines for classification of overweight and obese adults in its "Clinical Guidelines on the Identification, Evaluation, and Treatment of Overweight and Obesity in Adults." *Id.* at *4. These Guidelines indicate that the classification into either category is predicated upon a person's Body Mass Index ("BMI"). *Id.* An adult with a BMI of 30.0 or above is deemed "obese." *Id.* The Guidelines further divide obesity into three levels, which "describe the extent of obesity, but [] do not correlate with any specific degree of functional loss." *Id.* at *4-5. Defendant concedes that Plaintiff is obese, although, Defendant endeavors to downplay this fact by indicating that Plaintiff's weight (and therefore his BMI) has fluctuated over time.[2] According to Defendant, Plaintiff's BMI is between 30.1 and 31.7.

---

[2] Defendant notes that "it does not appear that any physician diagnosed Plaintiff with obesity[,]" and points out that "[t]here is one reference to obesity in a letter discussing EMG results[.]" (Def.'s Br. 6; *id.* at n.2.) The lack of a formal diagnosis is of no moment.

> When the evidence in a case does not include a diagnosis of obesity, but does include clinical notes or other medical records showing consistently high body weight or BMI, we may ask a medical source to clarify whether the individual has obesity. However, in most such cases, we will use our judgment to establish the presence of obesity based on the medical findings and other evidence in the case record, even if a treating or examining source has not indicated a diagnosis of disability.

SSR 02-1p, 2002 SSR LEXIS 1, at *9.

Given the potential risk factors associated with obesity, the Social Security Administration considers obesity in the sequential evaluation process. As set forth in SSR 02-1p, obesity is considered in determining whether: (1) "The individual has a medically determinable impairment[;]" (2) "The individual's impairment(s) is severe[;]" (3) "The individual's impairment(s) meets or equals the requirements of a listed impairment in the listings[;]" and (4) "The individual's impairment(s) prevents him or her from doing past relevant work and other work that exists in significant numbers in the national economy." *Id.* at *7.

In the instant case, the ALJ listed "obesity" among Plaintiff's various severe impairments at step two. SSR 02-1p provides that "we will find that obesity is a 'severe' impairment when, alone or in combination with other medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." *Id.* at *11. Beyond mentioning obesity at step two, there is no mention of it in the ALJ's decision. Given that the finding of obesity as a severe impairment requires some evidence that it – either alone or in combination with another impairment – limits a claimant's ability to do basic work activities, the failure to mention obesity elsewhere in the decision is rather curious.

It is true that "[a]n ALJ need not employ a 'particular mode of analysis' when considering the impact of obesity." *Norman v. Astrue*, 694 F. Supp. 2d 738,

741 (E.D. Ohio 2010) (quoting *Bledsoe v. Barnhart*, 165 F. App'x 408, 411-12 (6th Cir. 2006)).  However, "the ALJ must still 'consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation.'" *Id.* (quoting *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009)).

     Defendant contends that the lack of any evidence of obesity-related limitations precluded the necessity of the ALJ evaluating Plaintiff's obesity beyond what already appeared in his decision.  As support, Defendant relies on *Essary v. Commissioner of Social Security*, 114 F. App'x 662 (6th Cir. 2004), an unpublished case in which a panel of the Sixth Circuit rejected the plaintiff's argument that the ALJ erred in evaluating her RFC because "the ALJ failed to consider the impact of her obesity." *Id.* at 667.  The court noted that the ALJ did take account of the plaintiff's obesity, stating in his decision that "degenerative disc disease of the lumbar spine, *obesity*, hypertension, major depressive disorder, can reasonably be expected to result in some degree of functional physical and mental limitations. . . ." *Id.* (emphasis added).  Rejecting the plaintiff's argument regarding the adequacy of the ALJ's decision on the obesity issue, the court indicated that "[t]he absence of further elaboration on the issue of obesity likely stems from the fact that Essary failed to present evidence of any functional limitations resulting specifically from her obesity." *Id.*; *see also Cranfield v. Comm'r of Soc. Sec.*, 79 F. App'x 852 (6th Cir. 2003) (finding no error where the

claimant provided no evidence that obesity affected her ability to work because 20 C.F.R. § 416.912(a) required that the claimant "furnish medical and other evidence that [the SSA] can use to reach conclusions about [her] medical impairment(s) and . . . its effect on [her] ability to work on a sustained basis.").

Despite the above authority, Defendant's argument that the ALJ deemed obesity a severe impairment is sufficient to satisfy SSR 02-1p is not well-taken. Notably, *Essary* and *Cranfield* are distinguishable from this case in that neither panel discussed, or even mentioned, SSR 02-1p and the ruling expressly "remind[s] adjudicators to consider [the effects of obesity] when evaluating disability."  SSR 02-1p, 2002 SSR LEXIS 1, at *2.  Further, "adjudicators [are] to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity."  *Id.* at *3.  While the ruling states that "we will not make assumptions about the severity or functional effects of obesity combined with other impairments[,]" it also provides that "[a]n assessment should [] be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment."  *Id.* at *15-17.  There is no such assessment in the ALJ's decision, nor any discussion of obesity in the RFC formulation, as, it bears repeating, the only reference to obesity was at step two.

13

While the Court acknowledges that the ALJ's single reference to obesity may not, standing alone, be enough to require remand, Plaintiff's second claim of error regarding medical equivalence compounds this Court's concerns. In his second claim, Plaintiff argues that remand is required because the ALJ failed to acquire the necessary medical advisor opinion on the issue of equivalency at step three, as required by SSR 96-6p. This argument is related to the first in that it is unclear whether the ALJ considered obesity as it applied to his evaluation of the listing level impairments. In other words, although the ALJ determined that none of Plaintiff's impairments met or medically equaled a listing, there is no indication of whether the ALJ considered the impact of obesity on the other severe impairments, or how Plaintiff's obesity impacted the ALJ's evaluation of the listings. If the ALJ had obtained the required medical advisor opinion on the issue of equivalency at step three, the opinion would have accounted for obesity.

At step three of the sequential evaluation process, the Commissioner determines whether any of a claimant's severe impairments, singly or combined, meets or medically equals an impairment listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1. SSR 96-6p provides:

> The [ALJ] . . . is responsible for deciding the ultimate legal question whether a listing is met or equaled. . . . However, longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the [ALJ] . . . *must be received into the record as expert opinion evidence and given appropriate weight*.

14

SSR 96-9p, 1996 SSR LEXIS 3, at *7-8 (emphasis supplied); *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) ("Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue.") (citing 20 C.F.R. § 404.1526(b)); *Retka v. Comm'r of Soc. Sec.*, No. 94-2013, 1995 U.S. App. LEXIS 35546, at *4 (6th Cir. Nov. 22, 1995) ("Generally, the opinion of a medical expert is required before a determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b)).  As another federal court has explained, "[t]he basic principle behind SSR 96-6p is that while an ALJ is capable of reviewing records to determine whether a claimant's ailments meet the Listings, expert assistance is crucial to an ALJ's determination of whether a claimant's ailments are equivalent to the Listings."  *Galloway v. Astrue*, No. H-07-01646, 2008 U.S. Dist. LEXIS 112690, at *2 (S.D. Tex. May 23, 2008).

Here, the ALJ's decision addresses why none of Plaintiff's impairments, singularly or in combination, met or medically equaled the requirements of a listed impairment, including 1.02B, 1.04, 3.03, 11.01, 11.02, or 11.03.  While the mental impairment conclusions were supported by a medical opinion of medical equivalence by state psychiatric consultant, James Tripp, Ed.D., Defendant concedes that the ALJ did not have an opinion on the issue of equivalence as it pertains to Plaintiff's physical impairments.  This concession that the ALJ lacked a

medical advisor on the equivalency issue at step three of the sequential analysis is problematic. As another judge in this district has explained:

> The great weight of authority holds that a record lacking any medical advisor opinion on equivalency requires a remand.[3] *Stratton v. Astrue*, 2012 U.S. Dist. LEXIS 69552 (D.N.H. May 11, 2012) (collecting cases); *see also Byberg v. Comm'r of Soc. Sec.*, 2013 U.S. Dist. LEXIS 42868 (E.D. Mich. Mar. 27, 2013); *Harris v. Comm'r of Soc. Sec.*, 2013 U.S. Dist. LEXIS 39950 (E.D. Mich. Mar. 22, 2013) (remanding because a medical opinion on the issue of equivalence is required, regardless of whether the SDM model is implicated); *Hayes v. Comm'r of Soc. Sec.*, 2013 U.S. Dist. LEXIS 28467 (E.D. Mich. Feb. 4, 2013) (remanding because no expert opinion on equivalence in the record), adopted by 2013 U.S. Dist. LEXIS 27479 (E.D. Mich. Feb. 28, 2013); *Maynard v. Comm'r of Soc. Sec.*, 2012 U.S. Dist. LEXIS 160848 (E.D. Mich. Nov. 9, 2012) ("[O]nce a hearing is requested, SSR 96-6p, is applicable, and requires a medical opinion on the issue of equivalence.").

*Capshaw v. Comm'r of Soc. Sec.*, 2013 U.S. Dist. LEXIS 124986, at *46-47 n.4 (E.D. Mich. Aug. 9, 2013), adopted by 2013 U.S. Dist. LEXIS 124860 (internal citations omitted).

While the Court is not necessarily persuaded that Plaintiff will be able to show that his physical impairments satisfy the equivalency requirements, it concludes that the lack of an expert medical opinion on the issue of equivalency violated the requirements of SSR 96-6p. While Defendant argues that Plaintiff

---

[3] The Court notes that "[i]t is true there is case authority landing on both sides of the question, but the *great weight of authority* holds that a record lacking any medical expert opinion on equivalency requires remand." *Harris v. Comm'r of Soc. Sec.*, No. 12-10387, 2013 U.S. Dist. LEXIS 39950, at *22, 188 Soc. Sec. Rep. Serv. 440 (E.D. Mich. Mar. 22, 2013).

has failed to point to any objective medical evidence suggesting that consideration of Plaintiff's obesity would have any impact on the evaluation of medical equivalency, it is not the prerogative of this Court, the ALJ, or Defendant to draw conclusions about the raw medical data and how Plaintiff's severe impairments may interact with the others. Stated differently, "[w]hile there is support for the proposition that such an error can be harmless," as urged by Defendant, "[n]either the ALJ nor this court possesses the requisite medical expertise to determine if [Plaintiff's] impairments . . . in combination equal one of the Commissioner's listings." *Harris v. Comm'r of Soc. Sec.*, No. 12-10387, 2013 U.S. Dist. LEXIS 39950, at *22-23, 188 Soc. Sec. Rep. Serv. 440 (E.D. Mich. Mar. 22, 2013) (second and third alterations in original) (quotation omitted).

 Prior to concluding, the Court finds it necessary to address a portion of Defendant's argument on the issue of medical equivalency. In its brief, Defendant notes that the "ALJ did secure a consultative physical examiner, who opined that Plaintiff's abilities to perform work-related activities were not greatly impaired." (Def.'s Br. 13.) This is relevant, according to Defendant, because the listings the ALJ analyzed are those that are severe enough to prevent an individual from any gainful activity. It allegedly follows that "the examiner's opinion that Plaintiff's ability to perform work-related activities was not greatly impaired was tantamount to an opinion that his condition was not of equivalent severity to a listed

17

impairment." (*Id.*) This argument, while perhaps creative, is both factually misleading and legally frivolous. Government counsel should consider this statement not only an admonishment, but an explicit warning against making such misrepresentations to the Court in the future.

First, as Plaintiff points out, the consultative examination referred to was not requested by the ALJ in this claim, but rather, by a different ALJ in a previously adjudicated claim for disability. (Pl.'s Reply 2-3.) Second, the evaluation was conducted on August 23, 2010 by Leonidas Rojas, M.D., who did not have access to two additional years of medical data submitted in this case (for example, a March 2012 EMG of the upper right extremity which revealed far advanced right carpal tunnel syndrome). This is relevant because the ALJ here noted that he was not adopting the RFC from the prior disability claim because "there is new and material evidence that supports a change with respect to the claimant's ability to perform manipulative and postural activities . . . ." (ECF No. 10-2, Pg ID 41.) Moreover, the ALJ explicitly indicated that he gave Dr. Rojas's opinion limited weight. It is therefore puzzling that Defendant endeavors to persuade this Court to accord it great weight here. Third, Dr. Rojas did not provide an opinion with regard to medical equivalence, and Defendant's efforts to construe Dr. Rojas's opinion, which was "limited to [his] specialty as an internist[,]" (AR 309), into an

18

opinion on medical equivalence represent, at best, a flawed understanding of what is required by SSR 96-6p.

## IV. CONCLUSION AND ORDER

For the reasons set forth above, the Court concludes that the ALJ's disability determination is not, as required, supported by substantial evidence. This is because the ALJ declined to seek a medical opinion on the issue of medical equivalence at step three. Compounding this error, the ALJ's decision is opaque in detailing the consideration given to Plaintiff's obesity throughout the disability determination, thereby precluding meaningful judicial review. These issues should be addressed on remand so that the ALJ can properly make an equivalency determination after consulting with a medical expert and so that the ALJ can elaborate on the restrictions attributable to Plaintiff's obesity.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion to Remand is **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment is **DENIED**;

**IT IS FURTHER ORDERED** that the case is **REMANDED** to the Commission for reconsideration pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this Opinion and Order.

Dated: February 23, 2015

s/PATRICK J. DUGGAN<br>UNITED STATES DISTRICT JUDGE

Copies to:

**John M. Brissette, Esq.**
**Meghan O'Callaghan, Esq.**
**Susan K. DeClercq, AUSA**